IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOV ELECTRONIC FILING SVC LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| | § | Case No. 4:23-cv-00088 |
| NGUYEN TRUNG TIN, and DGBIZ LLC | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

C. Dale Quisenberry
QUISENBERRY LAW PLLC
Texas State Bar No. 24005040
dale@quisenberrylaw.com
13910 Champion Forest Drive, Suite 203
Houston, Texas 77069
Telephone: (832) 680-5000
Facsimile: (832) 680-5555

ATTORNEYS FOR PLAINTIFF

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND FACTS .........................................................................................2

        A.      Plaintiff And Its Trademark Rights ..............................................................2

        B.      Plaintiff's Copyright .....................................................................................3

        C.      Defendant's Infringing Activities .................................................................3

        D.      Defendant's Profits .......................................................................................6

III.    DEFAULT JUDGMENT STANDARD .....................................................................7

IV.     ARGUMENT .............................................................................................................7

        A.      Plaintiff Is Entitled To Default Judgment
                Of Trademark Infringement and Unfair Competition ...................................7

        B.      Plaintiff Is Entitled To Default Judgment
                Of Copyright Infringement ............................................................................9

                1.      Plaintiff Is Entitled To Default Judgment
                        Of Copyright Ownership .....................................................................9

                2.      Plaintiff Is Entitled To Default Judgment
                        Of Factual Copying And Substantial Similarity...............................10

        C.      Plaintiff Is Entitled To Default Judgment
                Of Damages ..................................................................................................11

                1.      Plaintiff Is Entitled To Default Judgment Of
                        Damages On Its Trademark Infringement Claim .............................11

                2.      Plaintiff Is Entitled To Default Judgment Of
                        Damages On Its Copyright Infringement Claim...............................11

        D.      Plaintiff Is Entitled To A Permanent Injunction.........................................12

        E.      Plaintiff Is Entitled To An Award Of Its Costs And Attorneys Fees ..................14

V.      CONCLUSION ........................................................................................................14

## I.    INTRODUCTION

Plaintiff owns a federal trademark registration on its mark "ClickDissolve" in connection with its business that assists companies to dissolve their legal entities, such as limited liability companies, corporations and non-profits, and in filing dissolution paperwork with appropriate state agencies.  Plaintiff discovered that defendant DGBIZ LLC ("Defendant") was using Plaintiff's "ClickDissolve" mark verbatim on Defendant's website and its Google Ad campaign in connection with Defendant's competing business on the exact same services that Plaintiff provides under its "ClickDissolve" trademark.  Plaintiff also discovered that Defendant had copied Plaintiff's "Service Agreement" as well.  Plaintiff brought this lawsuit against Defendant for trademark infringement, unfair competition, and copyright infringement.  Plaintiff served Defendant, Defendant defaulted, and the clerk entered default (Doc. 11).  Plaintiff now files this motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.

## II.    BACKGROUND FACTS

### A.    Plaintiff And Its Trademark Rights

Plaintiff is in the business of assisting companies to dissolve their legal entities, such as limited liability companies, corporations and non-profits, and filing dissolution paperwork with appropriate state agencies.  FIRST AMENDED COMPLAINT ("FAC") (Doc. 008) ¶ 13; DECLARATION OF TRI HUYNH ("HUYNH DECL.") ¶ 2.  Plaintiff conducts its business under its federally-registered "ClickDissolve" trademark.  *Id.*  Plaintiff commenced use of its "ClickDissolve" trademark in connection with its business dissolution services at least as early as June 17, 2020.  *Id.*  Since that time, Plaintiff has continuously and exclusively used its "ClickDissolve" mark in connection with its

business dissolution services. *Id.* As a result, Plaintiff has developed significant consumer goodwill and recognition corresponding to its "ClickDissolve" mark. *Id.*

Plaintiff has developed valuable trademark rights in its "ClickDissolve" mark and obtained a corresponding federal trademark registration for its business dissolution services. FAC ¶ 14; HUYNH DECL. ¶ 3. Plaintiff owns United States Trademark Registration No. 6,721,921 ("the '921 registration"), a true and correct copy of which is attached as Exhibit A to the FAC, and fully incorporated herein by reference. *Id.* The application from which the '921 registration issued was filed on March 25, 2021. *Id.* The '921 registration was registered on the Principal Register on May 24, 2022, and lists its date of first use as at least as early as June 17, 2020 and its date of first use in commerce as at least as early as June 20, 2022. *Id.* The '921 registration is valid and subsisting. *Id.*

Plaintiff's "ClickDissolve" mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff in connection with its business dissolution services. FAC ¶ 15; HUYNH DECL. ¶ 4. Plaintiff continues to market and promote its "ClickDissolve" mark by displaying its "ClickDissolve" mark on its website, through the purchase of its "ClickDissolve" trademark as a keyword in connection with its Google Ad campaign on the Google search engine, and in customer communications. FAC ¶ 16; HUYNH DECL. ¶ 5. These are just a few examples of the advertising channels through which Plaintiff promotes and markets its business dissolution services in connection with its "ClickDissolve" trademark. *Id.*

As a result of Plaintiff's substantial use and promotion of its "ClickDissolve" mark, the mark has acquired great value as a specific identifier of Plaintiff and its business dissolution services, and it also serves to identify and distinguish Plaintiff's business dissolution services from those of others. FAC ¶ 17; HUYNH DECL. ¶ 6. Consumers readily recognize Plaintiff's "ClickDissolve" mark as a

distinctive designation of the origin of Plaintiff's "ClickDissolve" branded business dissolution services.  FAC ¶ 18; HUYNH DECL. ¶ 7.  The "ClickDissolve" mark is an intellectual property asset of considerable value as a symbol of Plaintiff and its high-quality business dissolution services, reputation and goodwill.  *Id.*

### B.    Plaintiff's Copyright

Plaintiff's website includes a "Services Agreement" that all new customers must sign to receive Plaintiff's services.  HUYNH DECL. ¶ 23, Exh. B.  Plaintiff's copyright in its "Services Agreement" has been registered with the United States Copyright Office as United States Copyright Certificate of Registration Number TX 9-212-703 ("the '703 registration").  *Id.*, Exh. A.  Plaintiff obtained the '703 registration within five years after first publication of Plaintiff's "Services Agreement."  *Id.*  Defendant had access to Plaintiff's "Services Agreement" as it was available on Plaintiff's website.  *Id.*

### C.    Defendants' Infringing Activities

Plaintiff discovered that DGBIZ LLC ("Defendant") plagiarized Plaintiff's website and used Plaintiff's federally-registered "ClickDissolve" trademark to knowingly and intentionally confuse Plaintiff's customers and divert business away from Plaintiff to Defendant.  FAC ¶ 19; HUYNH DECL. ¶ 9.  Defendant's unlawful scheme to confuse and divert customers is evident from the manner in which Defendant mimicked Plaintiff's website ([www.clickdissolve.com](www.clickdissolve.com)).  FAC ¶ 20; HUYNH DECL. ¶ 10.  Indeed, Defendant's website ([www.bizclose.us](www.bizclose.us)) included extensive copying of text word-for-word from Plaintiff's website.  *Id.*, *see* Exhibit B to the FAC - side-by-side comparisons of screenshots from Plaintiff's webpage and verbatim copying on Defendant's corresponding webpage.  *Id.*  Indeed, as shown on the last page of Exhibit B, the "Terms and

Services" section of Defendants' website included Plaintiff's "ClickDissolve.com" website in numerous places. *Id.*

As further evidence of Defendant's plagiarism, Defendant used an exact copy of Plaintiff's "Services Agreement" with its customers. FAC ¶ 21; HUYNH DECL. ¶ 11, Exh. C (copy of Defendant's "Services Agreement" used on its website, which is identical to Plaintiff's "Services Agreement" attached as Exhibit B to Huynh Decl.).

Defendant intentionally used Plaintiff's registered "ClickDissolve" trademark to knowingly deceive and confuse customers who were searching specifically for Plaintiff online. FAC ¶ 22; HUYNH DECL. ¶ 12. In this regard, pursuant to Defendant's fraudulent scheme, Defendant purchased Plaintiff's trademark "ClickDissolve" as a Google keyword for Defendant's Google Ad campaign. *Id.* Upon typing "clickdissolve" into a Google search bar and running a search on the Google search engine, Defendant's following ad would appear:

**Ad** · https://www.bizclose.us/    ⋮

**Dissolve Your LLC, Corporation - With Just a Few Clicks**

Dissolve your LLC or Corp with us, and we'll help file the paperwork from start to finish. We'll help with all the paperwork you need to officially close your business. Get started.

*Id.*

Indeed, in furtherance of their illegal enterprise to confuse and deceive consumers, as shown in the screenshots attached as Exhibits C and D to the FAC, Defendant intentionally designed its ad and structured its Google keyword campaign using Plaintiff's registered "ClickDissolve" trademark so that Defendant's ad appeared next to Plaintiff's website in the search results so as to induce customers searching for Plaintiff to be confused and contact Defendant instead. FAC ¶ 23; HUYNH DECL. ¶ 13.

Defendant conspired and collaborated with one or more of Plaintiff's current or former employees and other persons associated with Defendant to copy from Plaintiff's website, infringe on Plaintiff's trademark and copyright rights, and unfairly compete with Plaintiff. FAC ¶ 24; HUYNH DECL. ¶ 14. Defendant's wrongful acts of trademark infringement and unfair competition as alleged in the FAC have been carried out with full knowledge of Plaintiff's business and "ClickDissolve" trademark and copyright rights. FAC ¶ 25; HUYNH DECL. ¶ 15. Defendant plagiarized Plaintiff's website and other materials and used Plaintiff's "ClickDissolve" trademark for the purpose of trading on Plaintiff's goodwill and reputation associated with the "ClickDissolve" mark, and also to trick and confuse customers and potential customers of Plaintiff and divert business away from Plaintiff to Defendant. FAC ¶ 26; HUYNH DECL. ¶ 16. Based on Defendant's deceptive behavior, consumers did and will likely perceive some connection or association between Plaintiff and Defendant as to source, sponsorship, or affiliation in light of Defendant's deceptive use of Plaintiff's "ClickDissolve" trademark, even though no such connection or association exists. FAC ¶ 27; HUYNH DECL. ¶ 17. Defendant's intentional and deceptive acts of infringement and unfair competition as complained of in the FAC have actually caused consumer confusion, including by at least one consumer within this district, including causing consumers to think that Defendant's www.bizclose.us website was connected to, endorsed by, sponsored by, and/or affiliated with Plaintiff. FAC ¶ 28; HUYNH DECL. ¶ 18. In this regard, Plaintiff has further been harmed by consumers' negative impression or experience with Defendant's www.bizclose.us website being attributed to Plaintiff, thereby tarnishing and injuring Plaintiff's reputation. *Id.*

Defendant's actions have enabled it to trade off of and receive the benefit of the goodwill built up by Plaintiff through its continuous and exclusive use of Plaintiff's "ClickDissolve" mark.

FAC ¶ 29; HUYNH DECL. ¶ 19.  The business dissolution services Defendant provided in connection with its website and use of the "ClickDissolve" mark are the same as the business dissolution services Plaintiff provides under its federally-registered "ClickDissolve" mark.  FAC ¶ 30; HUYNH DECL. ¶ 20.  The consumers to whom Defendant advertised and marketed their business dissolution services using the "ClickDissolve" mark are the same consumers to whom Plaintiff advertises and markets, and advertised and marketed, its "ClickDissolve" business dissolution services.  FAC ¶ 31; HUYNH DECL. ¶ 21.  Plaintiff and Defendant marketed and advertised their respective business dissolution services through similar channels, including through the identical online advertising Google Ad channel.  FAC ¶ 32; HUYNH DECL. ¶ 22.

### D.    Defendants' Profits

When Plaintiff discovered Defendant's infringement, its owner signed onto Defendant's website (www.bizclose.us) and placed an order for Defendant's services.  HUYNH DECL. ¶ 23.  He paid for the services with his credit card.  *Id.*  He then checked his credit card transaction report and saw that the charge had appeared under the Merchant "DGBIZ BIZCLOSE.US".  *Id.*, Exh. D.  Defendant's website stated that its credit card transactions were processed by Stripe.  *Id.*  He then signed on to Stripe's website and could see that his transaction designated bizclose.us as the service provider.  *Id.*, Exh. E.

After this lawsuit was filed, Plaintiff served a subpoena on Stripe.  HUYNH DECL. ¶ 24, Exh. F.  In response to that subpoena, Stripe sent Plaintiff a letter with some attached documents.  *Id.*, Exh. G.  With reference to page STRIPE_053 of Exh. G, the total dollar amount of transactions that Stripe processed for Defendant through February 29, 2024 was $84,555.48.

## III.    DEFAULT JUDGMENT LEGAL STANDARD

Obtaining a default judgment is a two-step process: (1) the party seeking a default judgment first files a motion for clerk's entry of default by showing that the opposing party has failed to plead or otherwise defend, and (2) once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party.  Fed. R. Civ. P. 55.  The clerk has entered default against defendant DGBIZ (Doc. 11).  It is well established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  While alleged facts are taken as true, the court has discretion to award damages. *See U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After the clerk enters a default, 'the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.'").  The court "may" conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2).  A hearing is not necessarily required if the movant's record includes uncontested, sworn evidence that establishes the amount of damages.  *Broad. Music, Inc. v. Marler*, 2009 U.S. Dist. LEXIS 106147 * 13-14 (October 26, 2009 E.D. Tenn).

## IV.    ARGUMENT

### A.    Plaintiff Is Entitled To Default Judgment Of Trademark Infringement and Unfair Competition

To establish trademark infringement, Plaintiff must show that (1) it owns a valid and enforceable mark, and (2) Defendant's use of Plaintiff's trademark created a likelihood of confusion as to source, affiliation, or sponsorship.  *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012).  "Proof of the registration of a mark with the PTO constitutes *prima facie* evidence that the mark is valid and that the registrant has the exclusive right to use the

registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237-39 (5th Cir. 2010); *see also* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate."); *see also* 15 U.S.C. § 1115(a). Plaintiff's registration of its ClickDissolve mark satisfies the first element. *See* FAC, Ex. A.

"The question of likelihood of confusion is decided by considering a variety of factors including: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Oreck Corp. v. U.S. Floor Sys.*, 803 F.2d 166, 170 (5th Cir. 1986) (emphasis added), *cert. denied*, 481 U.S. 1069, 95 L. Ed. 2d 871, 107 S. Ct. 2462 (1987).[1] Plaintiff's FAC includes allegations of likelihood of confusion pursuant to these elements, and has properly alleged trademark infringement and unfair competition by Defendant. *See* FAC, ¶¶ 19-32.

Accordingly, Plaintiff is entitled to default judgment that Defendant has infringed Plaintiff's ClickDissolve trademark.

---

1    The same likelihood of confusion analysis applies to all of Kenco's Lanham Act and Texas trademark infringement and unfair competition claims. *Zapata Corp. v. Zapata Trading Intern., Inc.*, 841 S.W.2d 45, 47

**B.**     **Plaintiff Is Entitled To Default Judgment**
            **Of Copyright Infringement**

Under Fifth Circuit law, to establish a claim of copyright infringement, Plaintiff must show the following three elements: (i) ownership of a valid copyright; (ii) Defendant has engaged in factual copying of Plaintiff's Service Agreement; and (iii) Defendant's Service Agreement is substantially similar to Plaintiff's copyrighted Service Agreement. *Causi v. Fam. First Sports Firm LLC*, 2024 U.S. Dist. LEXIS 79815 *6-7, 2024 WL 1918315 (S.D. Tex. 2024) (citations omitted) (granting motion for summary judgment of copyright infringement of a photograph); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991) (citing two elements as: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work). A plaintiff need not prove the defendant's mental state to establish copyright infringement since copyright infringement is a strict liability tort. *Causi* at *7 (citations omitted).

**1.**     **Plaintiff Is Entitled To Default Judgment**
            **Of Copyright Ownership**

The undisputed evidence demonstrates that Plaintiff is the owner of a valid copyright in the Service Agreement. "A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *Id.*, citations omitted; *see also* 17 U.S.C. § 410(c). "Additionally, timely registrations are afforded presumptive originality." *Id.* "To be timely, a certificate of registration must be obtained 'before or within five years after first publication' of a work. *Id.*

Here, Plaintiff owns a certificate of registration from the U.S. Copyright Office covering the Services Agreement. FAC ¶ 21; Huynh Decl. ¶ 8 (Exh. A). Additionally, the registration was obtained well within five years after first publication of the Plaintiff's "Services Agreement." *Id.*

(Tex. App.—Houston [14th Dist.] 1992, no writ).

As such, Plaintiff is entitled to entry of default judgment that it owns a valid copyright in its "Services Agreement."

**2.     Plaintiff Is Entitled To Default Judgment
Of Factual Copying And Substantial Similarity**

The  undisputed evidence shows that Defendant engaged in factual copying of Plaintiff's "Services Agreement." "[F]actual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work; and (2) probative similarity. . . . In this court, if the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Causi* at 8, quoting *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001), and citing *Busti v. Platinum Studios, Inc*., 2013 U.S. Dist. LEXIS 158624, 2013 WL 12121116 •3 (W.D. Tex. Aug. 30, 2013) and *Batiste v. Lewis*, 976 F.3d 493, 501-03 (5th Cir. 2020) ("[A] plaintiff may raise an inference of factual copying without any proof of access if the works are 'strikingly similar.'").

Here, Defendant had access to Plaintiff's "Services Agreement" as it was available on Plaintiff's website.  HUYNH DECL. ¶ 8.   Defendant's infringing "Services Agreement" from its website is more than "strikingly similar" to Plaintiff's copyrighted "Services Agreement" as they are identical. FAC ¶ 21; HUYNH DECL. ¶ 8 (Exh. C).   "Since the works are strikingly similar under the second element of infringement, the works are also substantially similar under the third element of infringement." *Causi* at 9. Therefore, all elements of Plaintiff's copyright infringement claim with respect to Plaintiff's copyrighted Service Agreement have been satisfied based upon the undisputed evidence before the Court.  Accordingly, Plaintiff is entitled to entry of default judgment that Defendant infringed on Plaintiff's copyrights in its "Services Agreement."

C.    **Plaintiff Is Entitled To Default Judgment**
      **Of Damages**

1.    **Plaintiff Is Entitled To Default Judgment Of**
      **Damages On Its Trademark Infringement Claim**

Plaintiff is entitled to recover Defendant's profits for Defendant's trademark infringement. 15 U.S.C. § 1117(a).  "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  Here, Defendant's gross revenues corresponding to its trademark infringement amounts to at least $84,555.48.  HUYNH DECL. ¶¶ 23-24 (Ex. G).  As such, Plaintiff is entitled to default judgment awarding Plaintiff $84,555.48 for Defendant's trademark infringement.

2.    **Plaintiff Is Entitled To Default Judgment Of**
      **Damages On Its Copyright Infringement Claim**

Plaintiff is entitled to recover its actual damages plus Defendant's profits for Defendant's copyright infringement.  17 U.S.C. § 504(b).  Plaintiff seeks an award of Defendant's profits.  "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*  "[O]nce liability has been shown, § 504(b) creates an initial presumption that the infringer's 'profits ... attributable to the infringement' are equal to its gross revenue."  *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 3561, 366-67 (5th Cir. 2010) (citation omitted).  Here, Defendant's gross revenues corresponding to its copyright infringement amounts to at least $84,555.48.  HUYNH DECL. ¶¶ 23-24 (Ex. G).  As such, Plaintiff is entitled to default judgment awarding Plaintiff $84,555.48 for Defendant's copyright infringement.

### D.    Plaintiff Is Entitled To A Permanent Injunction

The Lanham Act grants courts the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable."   15 U.S.C. ¶ 1116(a).   The Copyright Act authorizes permanent injunctive relief as a remedy for copyright infringement "on such terms as [the court] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

The requirements for a permanent injunction for copyright and trademark infringement are substantially the same.  For a permanent injunction under Section 502 for copyright infringement, a party must show: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *Malibu Media, LLC v. Gonzales*, 2017 U.S. Dist. LEXIS 108525, 2017 WL 2985641 *4 (S.D. Tex. July 13, 2017), *citing DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).   For a permanent injunction under Section 1116(a) for trademark infringement, a party must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 714 (S.D. Tex. 2013), *quoting eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 165 L. Ed. 2d 641 (2006).

"[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003).  "[T]he fact that the Defendant continued to infringe after the Plaintiffs filed a federal

lawsuit indicates a clear danger of future infringement." *Superhype Pub., Inc. v. Vasilou*, 838 F. Supp. 1220, 1226 (S.D. Ohio 1993). "Given 'the public interest . . . in upholding copyright protections,' injunctions are regularly issued pursuant to 17 U.S.C. § 502." *Disney Enters., Inc. v. Farmer*, 427 F. Supp. 2d 807, 819 (E.D. Tenn. 2006), *citing Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 1310, 1314 (S.D. Fla. 2003). "[A] permanent injunction is the usual and normal remedy once trademark infringement has been found . . . ." *Diageo N. Am., Inc. v. Mexcor, Inc.*, 662 F. App'x 806, 813 (5th Cir. 2016). "Moreover, '[c]ourts also regularly issue injunctions as part of default judgments.'" *Disney*, 427 F. Supp. 2d at 819.

Plaintiff has shown above that it is entitled to entry of default judgment, which corresponds to success on the merits. *See Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006) ("[E]ntry of default against Defendant is tantamount to actual success on the merits."). Further, there is a substantial thhreat that Plaintiff will suffer irreparable harm without an injunction because of Defendant's refusal to respond to this lawsuit and because of the harm Plaintiff has suffered through actual confusion and dissatisfied customers of Defendant who think they were Plaintiff's customer, the threatened injury to Plaintiff (damages to its business reputation) outweighs any damage the injunction may cause Defendant, and the injunction will not disserve the public interest. *Sculpt Inc. v. Sculpt New York, LLC*, 2015 U.S. Dist. LEXIS 148653, 2015 WL 6690224 *3 (S.D. Tex. Nov. 3, 2015); *Hassell Free Plumbing, LLC v. Wheeler*, 2021 U.S. Dist. LEXIS 56613 *18 (N.D. Tex. Mar. 25, 2021) ("Plaintiff has shown that it has suffered an irreparable harm to its reputation and trademark because of consumer confusion between the marks."). Indeed, "an injunction would serve the public interest by promoting compliance with trademark law." *Hassell*

*Free Plumbing*, \*18 (finding "a permanent injunction is an appropriate remedy upon the entry of default judgment.")

Plaintiff is therefore entitled to permanent injunctive relief, including against all those in active participation with Defendant, such as its credit card processor, Stripe.

### E.    Plaintiff Is Entitled To An Award Of Its Costs And Attorneys' Fees

Upon entry of the final judgment by default, Plaintiff may file a claim for attorneys' fees. Plaintiff is also entitled to its reasonable costs for this case.  Costs are awarded as a matter of course to the prevailing party unless the Court provides otherwise.  Fed. R. Civ. P. 54(d).  Plaintiff therefore respectfully requests that the Court enter a final judgment by default that includes an award of reasonable attorneys' fees and costs.

## V.    CONCLUSION

For all of the above reasons, Plaintiff's motion for default judgment should be granted.

Respectfully submitted,

Dated:  May 5, 2025             By:  /s/      *C. Dale Quisenberry*
                                   C. Dale Quisenberry
                                   Texas State Bar No. 24005040
                                   dale@quisenberrylaw.com
                                   QUISENBERRY LAW PLLC
                                   13910 Champion Forest Drive, Suite 203
                                   Houston, Texas 77069
                                   Telephone: (832) 680-5000
                                   Facsimile: (832) 680-5555

                                   ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 5th day of May, 2025, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

In addition, the undersigned hereby certifies that Defendant DGBIZ LLC will be served with a copy of the above document via Certified United States Mail, Return Receipt Requested on the 6th day of May, 2025 to the following address (since the Post Office is already closed on May 5, 2025):

DGBIZ LLC
1544 Alder Street, Unit 98
Eugene, Oregon 97401

/s/      *C. Dale Quisenberry*
C. Dale Quisenberry